IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAYLA KOCH,** | : | CIVIL ACTION NO. 1:24-CV-549 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **EARLY IMPRESSIONS** | : | |
| **LEARNING CENTER, LLC,** | : | |
| | : | |
| **Defendant** | : | |

# MEMORANDUM

Plaintiff Kayla Koch advances disability discrimination claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONS. STAT. ANN. § 951, *et seq.*, against a prospective employer, defendant Early Impressions Learning Center, LLC. Early Impressions moves to dismiss Koch's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). We will deny the motion.

**I.      Factual Background & Procedural History**

Koch is a resident of Mechanicsburg, Pennsylvania who suffers from post-traumatic stress disorder ("PTSD"). (See Doc. 1 ¶¶ 2, 15). She attends weekly trauma therapy sessions for her medical condition, which makes focusing difficult. (See id. ¶¶ 15-16). On November 23, 2022, Koch applied for the position of toddler teacher at Early Impressions. (See id. ¶ 17). The position schedule was Monday through Friday, 7:30 a.m. to 4:30 p.m., with a one-hour lunch break. (See id. ¶¶ 24-26). Koch avers that her friend, Veronica, an Early Impressions associate, told her

the position included one day off per week. (See id. ¶ 18). The owner of Early Impressions, Tiffany Ballew, offered Koch the job on December 6, 2022, with a tentative start date of January 3, 2023. (See id. ¶¶ 23, 26). Koch allegedly accepted the position the same day via Indeed.com message. (See id. ¶ 27).

Koch told Ballew at the time she accepted the offer that Veronica had mentioned a guaranteed day off; she then asked whether she could have off every Tuesday to attend trauma therapy appointments. (See id. ¶¶ 28-29). Ballew responded the next day that she could not offer a four-day schedule and instead offered Koch a three-day-a-week position as a so-called "floater." (See id. ¶¶ 32-34). Koch told Ballew that she could not accept a floater position; she counteroffered to work Monday through Friday so long as she could take off from 7:30 a.m. until noon one day per week to attend therapy. (See id. ¶¶ 36-37). Ballew stated she could not accommodate full-time schedules, and instructed Koch to message her if circumstances changed and she would like to be put back on the list of potential candidates. (See id. ¶¶ 38-39). Koch then made two subsequent requests for time off from 9:30 a.m. until 11:45 a.m. or from 9:50 a.m. until 11:15 a.m. each Tuesday. (See id. ¶¶ 42-43, 45-47). On December 13, Ballew explained that she could not offer the requested accommodations and that she considered Koch's application void.

(See Doc. 5 ¶¶ 48-49; see also Doc. 7-3 at 6).[1]  Koch responded that she had moved her trauma therapy appointments to coincide with her lunchbreak; she also told Ballew it was illegal to rescind her job offer after she accepted simply because she requested an accommodation.  (See Doc. 1 ¶¶ 50-51).  On December 14, Ballew directed Koch to Early Impressions' attorney and stated that she would report any further communications to the police as harassment.  (See id. ¶¶ 52-53).

Koch dually filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on June 9, 2023.  (See id. ¶ 5).  The EEOC provided Koch notice of her right to sue via correspondence dated January 2, 2024.  (See id. ¶ 6).  This lawsuit followed.  Koch alleges discrimination and retaliation under both the ADA (Count I) and the PHRA (Count II).  (See id. ¶¶ 55-74).  Early Impressions now moves to dismiss Koch's complaint for failure to state a claim pursuant to Rule 12(b)(6).  The motion is fully briefed and ripe for resolution.

## II.   Legal Standards

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.

---

[1] Early Impressions attached the parties' Indeed.com message exchange to its opening brief as an exhibit.  (See Doc. 7-3).  We cite to that exhibit only to clarify the timing of this allegation in Koch's complaint, which states that this message took place "[o]n or about" December 14.  (See Doc. 1 ¶ 48).  We may consider these exchanges because the complaint fundamentally relies on them and because Koch does not challenge their authenticity.  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

See FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly,

4

550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Federal Rule of Civil Procedure 8(c) classifies a statute of limitations claim as an affirmative defense that must be pled in an answer to the complaint. See FED. R. CIV. P. 8(c). Nevertheless, the court may dismiss a complaint as time-barred under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002); see Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). This deficiency must be apparent on the face of the pleading. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). Our court of appeals has explained that the meaning of "the face of the complaint," as it relates to asserting affirmative defenses in a motion to dismiss, is coextensive with the general Rule 12(b)(6) limitations. Id.; see also Hoffman v. Nordic Nats., Inc., 837 F.3d 272, 280 & n.52 (3d Cir. 2016) (citations omitted) (discussing raising affirmative defense of preclusion in a Rule 12(b)(6) motion). Thus, materials properly considered include not only the complaint but also matters of public record, exhibits attached to the complaint, and undisputed materials embraced by the complaint but provided by the defendant. See Schmidt, 770 F.3d at 249; Hoffman, 837 F.3d at 280 & n.52.

**III. Discussion**

Early Impressions advances two arguments in support of its motion. First, it avers that it is not an "employer" under the ADA because it does not employ

5

enough people to come under the Act's auspices.  (See Doc. 7 at 5-12).  Second, it contends Koch has not timely exhausted her administrative remedies as to her PHRA claims.  (See id. at 14-20).[2]  We address each argument *seriatim*.

### A.   ADA Numerosity

The ADA prohibits employers from "discriminat[ing] . . . on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The Act defines "employer" in relevant part as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."  See id. § 12111(5)(A).[3]  This numerosity requirement is not jurisdictional; it is a substantive element of a plaintiff's *prima facie* case.  Spalla v. Elec. Mfg. Servs. Grp., Inc., No. 1:16-CV-821, 2017 WL 569178, at *4 & n.3 (M.D. Pa. Feb. 13, 2017) (Conner, C.J.) (citing Arbaugh v. Y&H Corp., 546 U.S. 500, 514-15 (2006); Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 77, 83 (3d Cir. 2003); Showers v. Endoscopy Ctr. of Cent. Pa., LLC, 58 F. Supp. 3d 446, 454 (M.D. Pa. 2014) (Conner, C.J.)).  The

---

[2] Early Impressions also requests that, if we deny its motion, we cabin discovery to the limited issue of numerosity under the ADA.  (See Doc. 11 at n.1).  It argues this proposed approach increases judicial efficiency because Koch's ADA claim is the only one within our original jurisdiction.  (See id.)  Koch did not respond to this argument.  (See generally Doc. 15).

[3] The PHRA defines an "employer" in relevant part as a person who employs four or more employees within Pennsylvania.  43 PA. CONST. STAT. ANN. § 954(b).  Early Impressions does not contest its status as an employer for PHRA purposes.  (See generally Doc. 7).

"current" year is the calendar year in which the alleged discriminatory acts occurred; the "preceding" year is the calendar year immediately before the current year. EEOC v. Hesco Parts Corp., 57 F. App'x 518, 522 (3d Cir. 2003) (citations omitted) (nonprecedential).

Early Impressions cites to its payroll records for 2021 and 2022 and a declaration from its owner, Ballew, to argue the complaint fails to state a plausible claim. (See Docs. 7-1, 7-2; see also Doc. 7 at 6-12). It then urges us in the alternative to convert its motion to one for summary judgment on numerosity grounds. (See Doc. 7 at 12-14). It would be premature to dismiss Koch's complaint based upon the documents Early Impressions attached to its motion. As courts within our circuit have recognized, a plaintiff need only allege that a defendant had 15 employees working each day of at least 20 weeks in the current or preceding year to survive a motion to dismiss. See, e.g., Gonzalez v. Busy Place Early Learning Ctr., No. 14-6379, 2015 WL 5679887, at *3 (D.N.J. Sept. 25, 2015) (collecting cases). And Koch's complaint states Early Impressions "had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the [relevant years]." (See Doc. 1 ¶ 56). This allegation, although tied to the statutory language, is factual, not legal. Gonzalez, 2015 WL 5679887, at *3. It is sufficient to "raise a reasonable expectation that discovery will reveal evidence of each necessary element." See

Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021) (quoting Fowler, 578 F.3d at 213).[4]

We also decline to convert Early Impressions' motion to one for summary judgment.  Rule 12(d) directs courts to convert a Rule 12(b)(6) motion to one under Rule 56 if it considers matters outside the pleadings.  See FED. R. CIV. P. 12(d).  But the court must provide the parties a "'reasonable opportunity' to present all material relevant to a summary judgment motion" and unambiguous notice of the court's intention to convert the motion before doing so.  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287-88 (3d Cir. 1999).  Our court of appeals has held that a motion framed in the alternative is sufficient notice, Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996), overruled on other grounds in Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000), but courts regularly decline to convert "when little or no discovery has occurred," see Kurdyla v. Pinkerton Sec., 197 F.R.D. 128, 131 (D.N.J. 2000) (citing Brennan v. Nat'l Tel. Directory Corp., 850 F. Supp. 331, 335-36 (E.D. Pa. 1994) (collecting cases)).  No discovery has occurred in this case, (see Doc. 9 at 17), so conversion is unwarranted.

---

[4] The cases Early Impressions cites for the proposition that we may dismiss based on lack of numerosity, (see Doc. 7 at 8-9), are distinguishable.  In each of those cases, the plaintiff offered evidence to show the numerosity requirement was not met.  That is not the situation here, where Koch has not introduced any uncertainty regarding the numerosity-related allegations in the complaint.

B.     **PHRA Exhaustion**

Next, Early Impressions argues Koch failed to timely exhaust her administrative remedies under the PHRA.[5] (See Doc. 7 at 14-20). A plaintiff must first timely exhaust her administrative remedies before seeking judicial intervention on a PHRA claim. Mandel v. M&Q Packaging Corp., 706 F.3d 157, 164-65 (3d Cir. 2013); see also PA. CONS. STAT. ANN. § 959(h). A claimant does so by filing a charge of discrimination with the PHRC within 180 days of the alleged discriminatory act. Mandel, 706 F.3d at 164-65; see also PA. CONS. STAT. ANN. § 959(h). Here, the timeliness determination is driven by two considerations: when Koch filed with the PHRC, and whether actionable conduct plausibly occurred in the 180 days before the filing.

As to the first question, Early Impressions posits Koch did not file the charge until June 20, 2023, when the EEOC transmitted a dual filing notification to the PHRC. (See Doc. 11 at 4-6; see also Doc. 11-1 at 33).[6] When a charge has been filed with the PHRC is a matter of state law. Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). Under Pennsylvania law, a "dual filing"—that is, a charge of discrimination filed with the EEOC that has been forwarded to the PHRC pursuant to their worksharing agreement—satisfies the exhaustion requirement. Lantz

---

[5] It is undisputed that Koch timely exhausted the administrative remedies on her ADA claims.

[6] When deciding a motion pursuant to Rule 12(b)(6), the court may consider undisputed materials embraced by the complaint but provided by the defendant. See Schmidt, 770 F.3d at 249; Hoffman, 837 F.3d at 280 & n.52. The EEOC charge is integral to Koch's complaint in this matter, and she has not disputed the authenticity of the copy provided by Early Impressions. (See generally Doc. 15).

v. Hosp. of the Univ. of Pa., No. 96-2671, 1996 WL 442795, at *3 (E.D. Pa. July 30, 1996) (citations omitted). A plaintiff, however, cannot rely on the existence of the worksharing agreement alone. Woodson, 109 F.3d at 927. Rather, a claimant must evince "an intent to file a PHRC charge" in documents filed with the EEOC. Seeger v. C&S Wholesale Grocers, Inc., No. 1:13-CV-48, 2013 WL 3208590, at *4 (M.D. Pa. June 24, 2013) (Conner, J.).

Our court of appeals has determined that completing an EEOC information questionnaire is insufficient when the questionnaire contained no language indicating an intent to dual file. Mandel, 706 F.3d at 165. And while the Third Circuit and Pennsylvania courts are formally silent on the issue, lower courts within our circuit have held that an EEOC charge of discrimination that instructs the EEOC to dual file is filed with the PHRC on the same date it was filed with the EEOC. See Zielinski v. Whitehall Manor, Inc., 899 F. Supp. 2d 344, 352-53 (E.D. Pa. 2012) (collecting cases); see also Pifer v. Myzak Hydraulics, Inc., Nos. 2:13-CV-452, 2:13-CV-559, 2015 WL 300489, at *3 (W.D. Pa. Jan. 22, 2015) (citation omitted); Seeger, 2013 WL 3208590, at *3-4. This standard relaxes the general rule that a charge is deemed filed with the PHRC on the date the agency receives it. See Vincent v. Fuller Co., 616 A.2d 969, 971 (Pa. 1992). To hold otherwise would render the dual filing system meaningless by assigning plaintiffs the risk of administrative delay in the transmission of a charge from one agency to another. Zielinski, 899 F. Supp. 2d at 353 (citing Seybert v. Int'l Grp., Inc., No. 07-3333, 2009 WL 722291, at *17 (E.D. Pa. Mar. 17, 2009)).

Koch has plainly demonstrated an intent to dual file. The charge of discrimination Koch filed with the EEOC on June 9, 2023, unambiguously states, "I want this charge filed with both the EEOC and the State or local Agency, if any." (See Doc. 11-1 at 19). In addition, the form identifies the PHRC as the relevant agency. (See id.) We find that Koch filed the charge of discrimination with the PHRC on June 9, 2023. Accordingly, her claims are only timely exhausted to the extent they arise out of actionable conduct on or after December 11, 2022—the 180th day preceding her filing.

The limitations period on actionable conduct begins to run when an employer denies an employees' request for reasonable accommodation. Mercer v. SEPTA, 608 F. App'x 60, 63 (3d Cir. 2015) (nonprecedential); see also Leonard v. SEPTA, No. 20-2033, 2021 WL 229397, at *5 (E.D. Pa. Jan. 22, 2021). The continuing violation doctrine does not apply; rather, each denial of a reasonable accommodation request constitutes a discrete, legally cognizable discriminatory act. Mercer, 608 F. App'x at 63-64 (citing Aubrey v. City of Bethlehem, Fire Dep't, 466 F. App'x 88, 93 (3d Cir. 2012) (nonprecedential)). While denials of reasonable accommodation requests are actionable, refusals to reconsider prior denials or inaction in response to an employee's "general complaints" are not. See id.

It is difficult to parse a new request for reasonable accommodation from a plea to revisit a previous denial because a "request for reasonable accommodation requires a great deal of communication between the employee and employer." Bultemeyer v. Fort Wayne Cmty. Schs., 100 F.3d 1281, 1285 (7th Cir. 1996). Determining reasonable accommodations is an "'interactive process.'" Taylor

v. Phoenixville Sch. Dist., 184 F.3d 296, 311 (3d Cir. 1999) (quoting 29 C.F.R. § 1630.2(o)(3)), abrogated by statute on other grounds as recognized in Rocco v. Gordon Food Serv., 998 F. Supp. 2d 422, 426 n.1 (W.D. Pa. 2014). And our court of appeals has stated that "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." See id. at 312 (internal quotation marks omitted) (quoting Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997)). We must accordingly "look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary" to distinguish denials from continued negotiation. See Bultemeyer, 100 F.3d at 1285 (quoting Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996)). In this frame, subsequent employee proposals submitted while the employer is acting in good faith are not new requests because they are part of the "interactive process" contemplated by EEOC regulations. See 29 C.F.R. § 1630.2(o)(3). A request for reasonable accommodation remains live until an employer manifests unequivocal intent to reject any proposed accommodation or stops negotiating in good faith. An employee may then make a new request by communicating a less restrictive alternative not previously discussed.

  Koch's complaint contains plausible allegations of actionable conduct on or after December 11, 2022, within 180 days of her filing date. Recall that Ballew offered Koch the floater position on December 7, which Koch rejected before proposing an alternative accommodation. (See Doc. 1 ¶¶ 32-37). Viewed in the light most favorable to Koch, she did not terminate good faith negotiations by rejecting the floater position because she proposed a less-restrictive alternative

12

accommodation. (See id.) Then, on December 8, Ballew stated she could not accommodate full-time schedules and that she would return Koch to the pool of potential candidates if Koch's circumstances or demands changed. (See id. ¶¶ 38-39). This message implies Early Impressions would continue to consider alternative accommodations in good faith. In fact, Koch responded with a less restrictive proposed accommodation the same day. (See id. ¶¶ 40-47). On December 13, Ballew responded that Early Impressions "consider[ed Koch's] application void" without addressing her proposed alternatives. (See Doc. 7-3 at 6). Koch then offered to attend her therapy appointments during her lunch break. (See id.; see also Doc. 1 ¶ 51). At this procedural juncture, it is plausible—if not likely—that Ms. Ballew's December 13th message was the first time Early Impressions manifested a clear intent to stop negotiating in good faith, which started the PHRA exhaustion clock.[7] We will deny Early Impressions' motion to dismiss Koch's PHRA claims on timeliness grounds.

---

[7] The cases Early Impressions cites to the contrary are unconvincing. We begin with Gloeckl v. Giant Eagle, Inc., 176 F. App'x 324 (3d Cir. 2006), a nonprecedential opinion in which the Third Circuit affirmed entry of summary judgment on an ADA claim in favor of an employer. There, the panel determined the unlawful employment action occurred when the defendant refused a request to allow the plaintiff to return to work on a part-time basis. Gloeckl, 176 F. App'x at 326. The panel determined Gloeckl's claim that Golden Eagle refused to consider her for a part-time position after it had already denied the same relief did not restart the statute of limitations for exhaustion purposes. See id. Unlike the plaintiff in Gloeckl, who requested the same relief denied previously, Koch's messages each contained a less restrictive alternative accommodation. (See Doc. 1 ¶¶ 29-51). Koch was still negotiating without an unequivocal indication from Early Impressions that it would reject any proposed accommodation.

In addition, the company's proffered Supreme Court decisions—Delaware State College v. Ricks, 449 U.S. 250 (1980), and International Union of Electric, Radio & Machine Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc., 429 U.S.

## IV.     Conclusion

We will deny Early Impressions' motion (Doc. 5) to dismiss Koch's complaint. Early Impressions may request to limit discovery to the issue of numerosity under the ADA, see *supra* n.2, by formal motion.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     October 23, 2024

---

229 (1976)—are distinguishable.  Both cases evaluated claims under Title VII, a statute that, unlike the ADA, does not require defendants to participate in an "interactive process" to assess accommodation requests.  In any event, the issues in Robbins & Myers were (1) whether the pendency of a collective-bargaining-contract's grievance mechanism tolled the statute of limitations, and (2) the applicability of the 1972 amendments to Title VII.  429 U.S. at 233-34.  Neither is implicated here.  In Ricks, the Court addressed a claim that Delaware State College wrongfully denied Ricks tenure on account of his national origin.  449 U.S. at 254. The EEOC argued the statute of limitations did not begin to run until the university's grievance process had concluded.  See id. at 260-61.  The Supreme Court disagreed and explained that "entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative."  See id. at 261.  However, the grievance process in Ricks was not required by Title VII, whereas the ADA imposes an obligation on employers to negotiate in good faith.  Moreover, Koch has alleged facts to plausibly show Early Impressions would revisit its decision if she provided alternative availability or if her circumstances changed.  (See Doc. 1 ¶¶ 39-51).  That is unlike the denial letter in Ricks, which referred to a grievance process in which the university would reevaluate its initial decision only through consideration of the state of affairs at the time of the initial tenure decision.  Finally, we note that the ad hoc message-board communications at issue here involve several factual and interpretive disputes, whereas the university grievance process at issue in Ricks was more susceptible to characterization as a matter of law.  Without the benefit of factual discovery, we cannot determine with legal certainty the moment Early Impressions decided to reject any claim for accommodation.  At present, however, we find Koch has adequately pleaded timely administrative exhaustion under the PHRA.